1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ESTATE OF MILDRED J. HOSKINS;
ANDREW HOSKINS and ERICK HOSKINS,
as co-personal representatives,

               Plaintiff,

     v.

WELLS FARGO BANK, N.A.; and
NATIONSTAR MORTGAGE, LLC d/b/a
CHAMPION MORTGAGE,

               Defendants.

CASE NO. C20-75RSM

ORDER RE: MOTIONS TO DISMISS
AMENDED COMPLAINT

## I.      INTRODUCTION

This matter comes before the Court on Defendants' Motions to Dismiss Plaintiff's Amended Complaint under Rule 12(b)(6).  Dkts. #31 and #32.  Plaintiff Estate of Mildred J. Hoskins ("Estate") opposes.  For the reasons stated below, the Court GRANTS Defendant Wells Fargo's Motion and GRANTS IN PART AND DENIES IN PART Defendant Champion's Motion.

## II.      BACKGROUND

For purposes of these Motions to Dismiss, the Court will accept all facts in the Amended Complaint, Dkt. #28, as true.  The Court will briefly summarize these facts.

The Estate of Mildred J. Hoskins, Plaintiff, is the owner of the real property located at 4709 46th Ave S in Seattle, Washington. On or about January 10, 2003, Mr. Rufus Hoskins and Mrs. Mildred Hoskins entered into a Home Equity Conversion Mortgage ("HECM") otherwise known as a reverse mortgage, with Wells Fargo Bank, N.A. Mr. Hoskins was under a guardianship at the time, and Plaintiff alleges Mrs. Hoskins did not understand the intricacies of reverse mortgages.

The Promissory Note included a rider stating that $30,000 would be for necessary repairs on the home to be paid to the late Mr. Hoskins' then-appointed guardian "Partner in Care." Plaintiff claims no home repairs have ever been made, Defendants have not accounted for these funds, Plaintiff has not received these funds, and that Plaintiff is not aware of any party receiving the funds.

The appointed guardian for Mr. Hoskins advised the court handling the guardianship proceedings that the repairs were completed, terminated the guardianship, and collected the applicable fees. Plaintiff alleges that Wells Fargo failed to conduct any due diligence to confirm that the work was in fact done. The repair work at issue included repairing and/or replacing the foundation, wiring, structural support members, exterior door, windows, flooring, and ceiling, as well as mold remediation.

In 2012, Wells Fargo sent correspondence to Plaintiff purporting to have advanced funds to pay for property taxes and insurance and stating that the home loan was in default prior to taxes being due. The Amended Complaint states that Wells Fargo sent no notices and provided no statement of accounting until 2016.

In 2016 through 2017, Wells Fargo contacted Plaintiff's insurance company to put it on notice that the above property was vacant, which was apparently incorrect. This caused the insurance company to give notice of termination of the Homeowners policy.

ORDER RE: MOTIONS TO DISMISS AMENDED COMPLAINT - 2

1      In April of 2017, Defendants began the foreclosure process, issuing a notice of default.

2      In June of 2017, Wells Fargo sent an appraiser to the Hoskins' property to conduct an

3 appraisal. The appraiser, Jared Nelson, was met by the Hoskins' housing counselor at the time,

4 Sue Stevenson with Parkview Services.  Ms. Stevenson followed the appraiser throughout the

5 appraisal inspection, taking photos along with him, and noted that he failed to call out obvious

6 repairs and critical issues that were impossible to overlook and easily seen.  The Amended

7 Complaint alleges that this was done to "manipulate the Net Present Value analysis against a

8 loan workout in order to obtain the Hoskins property at a steep discount in the valuable Seattle

9 area," and that the Hoskins were "treated differently than other borrowers."  Amended

10 Complaint at ¶ 23.

11      Plaintiff entered into the Washington State Foreclosure Fairness Act mediation program

12 and made a $2,400.11 payment to Wells Fargo qualifying it for the opportunity to correct the

13 default.

14      Wells Fargo transferred the loan to Defendant Champion Mortgage and the loan was

15 never taken out of default status.  In October of 2018, Champion initiated foreclosure.  Plaintiff

16 requested mediation, which occurred on January 24, 2019.  This mediation was unsuccessful,

17 and the mediator issued a certificate of bad faith against Champion.

18      On December 17, 2019, Plaintiff filed the instant suit against Defendants Wells Fargo

19 and Nationstar Mortgage d/b/a Champion Mortgage. Dkt. #1-1.  On April 6, 2020, this Court

20 granted Defendants' first Motions to Dismiss in part, dismissing some claims in the original

21 Complaint with prejudice and some with leave to amend.  Dkt. #27.  Plaintiff's Amended

22 Complaint continues to claim that Defendants failed to provide the repair funds, failed to follow

23 industry guidelines, attempted to foreclose on the property improperly, and treated Mildred

24 Hoskins differently because she was a black woman.  Plaintiff brings claims under the

ORDER RE: MOTIONS TO DISMISS AMENDED COMPLAINT - 3

Washington State Consumer Protection Act ("CPA") against both Defendants, Breach of Contract against both Defendants, Washington Law Against Discrimination ("WLAD") against Wells Fargo, state Consumer Loan Act against Champion, Fair Debt Collections Practices Act ("FDCPA") against Champion, and for recoupment against Champion.  Defendants filed the instant Motions to Dismiss on May 1 and May 8, 2020.

### III.    DISCUSSION

#### A.  Legal Standard under Rule 12(b)(6)

In making a 12(b)(6) assessment, the court accepts all facts alleged in the complaint as true, and makes all inferences in the light most favorable to the non-moving party.  *Baker v. Riverside County Office of Educ.*, 584 F.3d 821, 824 (9th Cir. 2009) (internal citations omitted).  However, the court is not required to accept as true a "legal conclusion couched as a factual allegation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  The complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Id*. at 678.  This requirement is met when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id*.  The complaint need not include detailed allegations, but it must have "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555.  Absent facial plausibility, a plaintiff's claims must be dismissed.  *Id*. at 570.

Where a complaint is dismissed for failure to state a claim, "leave to amend should be granted unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency."  *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986).

**B.  Wells Fargo's Motion to Dismiss under Rule 12(b)(6)**

    **1.  CPA Claim against Wells Fargo**

"To prevail in a private [Consumer Protection Act] claim, the plaintiff must prove (1) an unfair or deceptive act or practice, (2) occurring in trade or commerce, (3) affecting the public interest, (4) injury to a person's business or property, and (5) causation." *Panag v. Farmers Ins. Co. of Washington*, 166 Wn.2d 27, 204 P.3d 885, 889 (2009) (citing *Hangman Ridge Training Stables v. Safeco Title Ins. Co.*, 105 Wn.2d 778, 786, 719 P.2d 531 (1986)).

Plaintiff argues Wells Fargo violated the CPA by "induc[ing] Plaintiff to enter into an HECM reverse mortgage promising to pay for necessary repairs to the property that were never performed;" "deliberately overstated the present value of the property and ignoring obvious defects, deferred maintenance, and other critical issues around the home, particularly those items that were supposed to have been done back in 2003, the initial purpose for the reverse mortgage loan, thus perpetuating the loss and deterioration of the property;" failing to conduct an inspection before releasing the maintenance funds, "manipulate[ing] the net present value of the Plaintiff's property, exaggerating and inflating the value as justification for denying a loan workout while leaving Plaintiff with a reduced value home;" and "treat[ing] Plaintiff differently than other borrowers who would not have had obvious defects, deferred maintenance, and open and obviously needed repairs ignored and concealed;" contacting Mildred Hoskins' insurer and advising that the home was vacant, causing the insurance to be canceled and making the loan fall into default status; and advancing property taxes before they were due from 2006 to 2012, adding to the default issues.  Dkt. #28 at 5–7.

Wells Fargo argues that many of the above actions fall outside of the CPA's 4-year statute of limitations.  Plaintiff appears to agree by focusing only on those actions that occurred in 2017.  *See* Dkt. #35 at 3, 7-8, 12-13.  For these remaining timely actions, Wells Fargo argues

that Plaintiff fails to adequately plead the public interest prong, *i.e.* facts that could establish a likelihood that additional individuals have been or "will be injured in exactly the same fashion." Dkt. #31 at 2 (citing *Michael v. Mosquera-Lacy*, 165 Wn.2d 595, 604–05, 200 P.3d 695 (2009)).  The Court agrees.  Plaintiff actually pleads that the Hoskins were treated differently than others.  Plaintiff's response to Wells Fargo's Motion is speculative and focuses only on how the Hoskins were treated.  Dkt. #35 at 6 ("Wells Fargo's unfair and deceptive acts… could happen to other elderly borrowers as contemplated by Congress…. Plaintiff has also alleged that Wells Fargo has engaged in a long pattern of unfair and deceptive conduct, including the many years of inaccurate accounting and advancing property taxes before due. It is not a mere hypothetical possibility that Wells Fargo's conduct could occur again, there is real and substantial potential for repetition because Wells Fargo has repeatedly engaged in such conduct.").  Even after amendment, Plaintiff fails to allege sufficient factual matter, accepted as true, to state a claim for relief under the CPA that is plausible on its face.  This claim will thus be dismissed without further leave to amend, and the Court need not address Wells Fargo's many other issues with the CPA claim.

### 2. Breach of Contract Claim

Plaintiff's original Breach of Contract claim stated only:

> Plaintiffs incorporate by this reference the averments contained in paragraphs 1 through 70 above. The loan obligations constitute a contract between the parties. All of the loan obligations incorporate terms that the parties will comply with all requirements of law. Defendants have not complied with all requirements of law, which are material breaches of the parties' contract. Defendants have further failed to honor the agreement. Such breaches of contract have deprived Plaintiffs of the benefit of their bargain and caused them damages in amounts to be proven at the time of trial.

Dkt. #1-1 at 9–10.  The Court dismissed this claim, finding that "Defendants have no notice from the above *what* was breached by *whom*, nor exactly *how* Plaintiffs were damaged."  Dkt. #27 at 7.  Plaintiff has now amended this claim:

> Plaintiff incorporates by reference the averments contained in paragraphs 1 through 45 above.  Defendant Wells Fargo, in April 2017, sought to foreclose and wrongfully attempt to collect funds it never disbursed to Plaintiff, thereby breaching the parties' loan agreement and depriving Plaintiff of the benefit of the bargain. Defendant Wells Fargo further breached the loan agreement by creating events of default in order to pursue foreclosure. Defendant Wells Fargo informed Plaintiff's insurer that the home was vacant, causing their insurance to be cancelled, an act of interference with performance of the contract. Defendant Wells Fargo also advanced property taxes before they were due and then sought to collect on them, further engaging in an act of wrongful interference. These breaches occurred less than six years ago. As a result of Defendant Wells Fargo's breaches of contract, Plaintiff Estate of Mildred J. Hoskins has suffered damages in amounts of at least $87,710.98 based upon the claimed but inaccurate sums sought to be wrongfully collected in its 2017 wrongful foreclosure predicated upon the created defaults, and wrongful interest and fees applied pursuing said wrongful foreclosure which Plaintiff incurred working to prevent the loss of her home.

Wells Fargo contends that "plaintiff merely repeats the same allegations that the Court has already found insufficient" and that "[a] breach of contract claim must point to a provision of the contract that plaintiff contends was breached."  Dkt. #31 at 4 (citing *Bess v. Ocwen Loan Servicing, LLC*, 2015 WL 1188634, at *4 (W.D. Wash. Mar. 16, 2015)).  Wells Fargo correctly states that Plaintiff has failed to point to a contract provision that was breached, makes only conclusory allegations, and in some instances asserts that Wells Fargo "sought" to do something without actually doing it—typically inadequate to demonstrate damages.  *See id.*  It is difficult to pin down what Plaintiff is claiming.  The Court finds that a claim under contract for the $30,000 that was to be paid in 2003 for home repairs, to the extent pled by Plaintiff, is untimely.  The Court further agrees that Plaintiff cannot claim $87,710.98 in damages simply because

Wells Fargo sought that amount; it appears Plaintiff has not been damaged in this measurable amount.

Plaintiff responds to the above critiques of the Amended Complaint by pivoting its cause of action to one for breach of the implied duty of good faith and fair dealing.  Dkt. #35 at 8.  Plaintiff then says "[s]hould it be necessary, however, there are several provisions under the Deed of Trust ("DOT") and Promissory Note ("Note") that Wells Fargo's conduct breached," going on to cite provisions requiring Plaintiff to pay property taxes and requiring the Hoskins to occupy the residence.  *Id*.  Plaintiff argues that Wells Fargo breached these terms by "paying taxes early," by "interfering with the obligation to pay insurance premiums," and by "communicating to third parties, such as Plaintiff's insurance agent, that her home was vacant." *Id*.

The Court finds that Plaintiff has only pled a cause of action for breach of contract, not one for implied duty of good faith and fair dealing, and cannot amend its pleading in a response brief.  Further, Plaintiff has not pled violations of the above terms from the DOT and Note.  Even if Plaintiff were to so plead now, it's not clear to the Court that Wells Fargo could be said to have breached terms that set obligations only for the Plaintiff.  In sum, the facts as pled do not plausibly match up with a breach of contract claim against Wells Fargo.  Having previously been given the opportunity to amend this claim, the Court finds now that this claim is properly dismissed with prejudice under Rule 12(b)(6).

### 3.  WLAD Claim

The Court previously dismissed this claim, ruling that the original Complaint failed to "state what acts of Defendants were discriminatory or why Plaintiffs have a basis to believe Ms. Hoskins was treated differently because she was a black woman."  Dkt. #27 at 8.

The Amended Complaint states that the Hoskins "received disparate treatment due to the conduct of Defendant Wells Fargo." Amended Complaint at ¶ 57. The section for this cause of action repeats the allegations that an appraiser "failed to accurately and thoroughly appraise the property," that Wells Fargo "did not accurately account for the loan funds, apparently disbursing funds without verifying the completion of work according to HUD requirements and thereafter, attempting to wrongfully collect such funds in an attempted foreclosure in April 2017," and that Wells Fargo "deliberately advanced funds to pay for property taxes before they were due." *Id*. at ¶¶ 58–60. Plaintiff accuses Wells Fargo of failing to notify it of certain HUD policies during the Foreclosure Fairness Act mediation.

Plaintiff connects these events to the WLAD cause of action in paragraph 62:

> Such acts by Defendant Wells Fargo, from the false appraisal to creating events of default, were designed to take advantage of Plaintiff as an unsophisticated borrower who was disabled and treated her different due to these as well as racial factors. The property is in Seattle with significant gentrification occurring over the term of the parties' contract. The Defendant's conduct has had a substantial disparate impact on persons such as Plaintiff.

Dkt. #28 at 11. Plaintiff alleges that Wells Fargo "has engaged in a pattern of deceptive behavior targeted at borrowers who were members of the protected classes mentioned above," and that Wells Fargo's "conduct has led to a drastic increase in foreclosures amongst members of those classes." Amended Complaint at ¶ 63. No further detail is provided as to Wells Fargo's conduct toward individuals other than Plaintiff.

Wells Fargo's position is that "[s]imply alleging that Ms. Hoskins was a 'member' of a protected class and that the defendant engaged in purported bad acts—none of which are alleged to have been motivated by racial animus—is insufficient to sustain a WLAD claim." Dkt. #31 at 5. Wells Fargo argues that Plaintiff has failed to state a disparate impact claim because Plaintiff has failed to plead "the existence of a facially-neutral policy, let alone facts sufficient

to establish 'a robust showing of causation linking defendant's policy to a statistically significant disparity' and which facts 'give rise to a plausible inference that defendant has imposed artificial, arbitrary, and unnecessary barriers to housing opportunities.'" *Id.* at 6 (citing *Firs Home Owners Ass'n v. City of SeaTac*, 2020 WL 1330687, at *4 (W.D. Wash. Mar. 23, 2020)).

Plaintiff's briefing repeats that Wells Fargo took advantage of Ms. Hoskins because of her age, disability, and race without further explanation. *See* Dkt. #35 at 11. Plaintiff asserts it is not required "to specifically plead that any racial slur or other derogatory comment was used" and that "Plaintiff is only required to plead sufficient facts from which a reasonable inference can be made to show that a defendant's acts had a discriminatory purpose or motivation ..." *Id.* at 12.

Plaintiff appears to bring this claim under theories of disparate treatment and disparate impact. Either way, the Court again finds this claim insufficiently pled under the *Twombly/Iqbal* standard. The claim of a discriminatory purpose or motivation behind Wells Fargo's actions is entirely conclusory. Plaintiff does not allege Wells Fargo took the above actions because of race, age, or disability, other than to simply state as much with labels and conclusions. Plaintiff's disparate impact claim is also conclusory and fails to point to any data, facts, or details related to individuals other than Plaintiff. Given all of the above, the Court finds that this claim is properly dismissed, and having been given the opportunity to amend with further detail, the Court will now dismiss this claim with prejudice.

**C. Motion to Dismiss filed by Champion**

    **1. CPA Claim against Champion**

Plaintiff alleges that Champion has violated the CPA by virtue of a finding in mediation that Champion acted in bad faith by "failing to verify how the total obligation was determined

and failing to provide a factual accounting for funds alleged due;" "unilaterally caus[ing] an affidavit of scrivener's error to be recorded;" "[f]ailing to provide an exact payoff statement and accurate accounting of loaned funds;" "[e]ngaging in prohibited 'dual tracking' of a loan;" and "[f] Failing to comply with the requirements of applicable law, such as initiating foreclosure after receiving a certificate of bad faith from a Foreclosure Fairness Act Mediator without having first provided any loss mitigation options." Dkt. #28 at 11–13.  Plaintiff alleges these actions occurred in trade or commerce and that they violate the public interest because they "implicate public interest statutes" including the Consumer Loan Act. *Id*. at 13.  Plaintiff pleads it was damaged "in amounts of at least $87,710.98 based upon the claimed but inaccurate sums sought to be wrongfully collected in its 2019 and currently pending wrongful foreclosure, and wrongful interest and fees applied pursuing said wrongful foreclosure which Plaintiff incurred working to prevent the loss of her home." *Id.*

Champion argues Plaintiff "fails to allege that any of Champion's alleged acts have the capacity to deceive a substantial portion of the public, fails to allege that Champion misled or misrepresented something of material importance, fails to allege any facts regarding the potential to affect the public interest, and fails to establish that, but for Champion's alleged unfair or deceptive practices, Plaintiff would not have suffered an injury". Dkt. #32 at 7.

The Court must accept all facts alleged in the Amended Complaint as true, and make all inferences in the light most favorable to the non-moving party. *Baker*, *supra*.  The Court finds that the actions of Champion as alleged satisfy the CPA's requirements of unfair or deceptive acts in trade or commerce affecting the public interest.  These actions involve an element of deception—hiding information or misrepresenting information to Plaintiff that would have the capacity to deceive a substantial portion of the public.  They obviously involve trade or commerce—this is not in dispute.  They affect the public interest in that they violate laws

enacted in the public interest and have the easy ability for repetition with other homeowners. However, what continues to trouble the Court is Plaintiff's allegation of injury. The Court is not convinced Plaintiff can allege an injury of $87,710.98 if this amount is merely being sought by Defendants. On the other hand, making all inferences in the light most favorable to Plaintiff, there has likely been some financial injury incurred in the process to resist the allegedly improper foreclosure. Given all of the above, the Court will deny Champion's motion to dismiss as to this claim.

### 2. Breach of Contract Claim

Plaintiff's contract claim states that Champion breached the original loan agreement because "Champion is the assignee to the parties loan which originated in 2003," and that Champion has failed to account for the $30,115 in funds that were for repairs for the home yet continues to attempt to collect on such funds by initiating wrongful foreclosure. Amended Complaint at ¶¶87–89. Plaintiff continues to cite to the $87,710.98 number in damages, which is comprised mainly of the money being sought by Defendants in foreclosure.

In moving to dismiss Plaintiff's breach of contract claim, Champion states only:

> Plaintiff's claim for breach of contract fails, as discussed *supra*, because it is not in privity of contract and does not allege that it is in privity of contract with Champion. Furthermore, Plaintiff fails to identify a contractual provision that was breached by Champion. Therefore, its claim for breach of contract must be dismissed because it fails to state any claim upon which relief can be granted against Champion.

Dkt. #32 at 9.

Although Champion's briefing on this issue is woefully inadequate, the Court has already ruled that Plaintiff's claims for breach of contract related to actions in 2003 are untimely, that Plaintiff fails to plead specific language in a contract that was breached, that Plaintiff has not pled a breach of the covenant of good faith and fair dealing, and that Plaintiff

has not pled specific breaches of the DOT or Note.  All of this holds true to Plaintiff's claim of breach of contract against Champion as well.  Accordingly, the Court finds that this claim is properly dismissed with prejudice.

### 3.  Recoupment under RCW 62A-3-305

RCW 62A-3-305 states in part that "the right to enforce the obligation of a party to pay an instrument is subject to… [a] claim in recoupment of the obligor against the original payee of the instrument if the claim arose from the transaction that gave rise to the instrument; but the claim of the obligor may be asserted against a transferee of the instrument only to reduce the amount owing on the instrument at the time the action is brought."

Plaintiff's recoupment claim states, *inter alia*:

> Plaintiff is entitled to assert her claims for recoupment pursuant to RCW 62A-3-305 as well as under 15 USC § 1640(k) as a defense to foreclosure.

Amended Complaint at ¶100.  Defendant Champion maintains that this is an affirmative defense, not a cause of action.  Dkt. #32 at 10.  The Court agrees and finds that this affirmative defense is best reserved for the foreclosure action.  This claim is dismissed without prejudice.

### 4.  Consumer Loan Act Claim

Plaintiff alleges that Champion has violated and engaged in prohibited business practices under the Consumer Loan Act, RCW 31.04 et seq., by engaging in "dual tracking" by "pursuing any collection activities while a complete loan modification application is being reviewed or while the borrower is making payments pursuant to a trial or permanent modification as well as failing to follow the required timelines and procedures for handling loss mitigation applications pursuant to WAC 208-620 et seq."  Amended Complaint at ¶ 82.

Champion's Motion barely mentions this claim, stating only that "Plaintiff's claim fails because the loan in question was originated by Wells Fargo Home Mortgage, Inc., a national

bank exempt from the provisions of the CLA," and because "Plaintiff's conclusory allegations fail to establish how Champion engaged in 'dual tracking,' fail to explain how 'dual tracking' violates the CLA, and fail to allege when Plaintiff 'provided' a 'loan modification application.'" Dkt. #32 at 8.  Champion fails to cite to any case law or further explain its legal position.

In Response, Plaintiff argues that Champion is the assignee of Wells Fargo, steps into its shoes for the purposes of this loan, and is otherwise subject to the CLA under RCW 31.04.025. Dkt. #36 at 8.  Plaintiff otherwise restates its pleadings with a few citations to WACs but no citations to case law.  Champion has not filed a Reply brief.

The CLA does not apply to "[a]ny person doing business under, and as permitted by, any law of this state or of the United States relating to banks, savings banks, trust companies, savings and loan or building and loan associations, or credit unions." RCW 31.04.025(2)(a). Champion has failed to demonstrate that it is protected by this exemption with any evidence or substantive argument.  The Court finds that Plaintiff's explanation of dual tracking is adequate to plead a CLA violation, and Champion has failed to demonstrate otherwise.  Accordingly, this claim will not be dismissed.

### 5.  FDCPA Claim

Plaintiff pleads this claim by reiterating the same facts as in its other claims (scrivener's error, certificate of bad faith, etc.) and stating "[s]uch conduct violates the FDCPA and has caused the Plaintiffs damages," described in the following paragraph as "at least $87,710.98." *See* Amended Complaint at ¶¶ 91–98.  The description of damages is identical or nearly identical to the damages described in Plaintiff's other claims.  Plaintiff does not plead what portions of the FDCPA are violated or plead how Champion qualifies as a debt collector.

The parties agree that the elements of an FDCPA claim are: "(1) the plaintiff has been the object of collection activity arising from a consumer debt, (2) the defendant collecting the

'debt' is a 'debt collector' as defined in the Act, and (3) the defendant has engaged in any act or omission in violation of the prohibitions of the act." *Yrok Gee Au Chan v. N. Am. Collectors, Inc.*, 2006 U.S. Dist. LEXIS 13353, 2006 WL 778642, at *3 (N.D. Cal. Mar. 24, 2006)).

Champion argues Plaintiff fails to allege that it is a debt collector, that it engaged in debt collection activities, or that Plaintiff is a consumer, as those terms are defined by the FDCPA, and that Plaintiff fails to allege that it suffered any damages as a result of any conduct by Champion. Dkt. #32 at 9. These are the same arguments Champion made, successfully, to get this claim dismissed from the original Complaint. Further, Champion argues that, at least in the Ninth Circuit, a loan servicer seeking to "retake and resell security" rather than "collect money from the borrower" is not a "debt collector" as defined in the FDCPA. Dkt. #32 at 8 (citing *Vien-Phuong Thi Ho v. ReconTrust Co., NA*, 858 F.3d 568, 571 (9th Cir. 2017)).

Plaintiff responds by arguing that there is a circuit split on this issue but that it is not necessary for the Court to find Champion to be a debt collector because "[t]he FDCPA applies to Champion in its limited capacity as a servicer, it applies to its foreclosure actions, and it applies to it as the beneficiary of the note." Dkt. #36 at 10 (citing 15 U.S.C. § 1692f(6) ("Taking or threatening to take any nonjudicial action to effect dispossession or disablement of property…")).

Champion again fails to respond to these arguments in a Reply brief.

The Court would dive further into these arguments if this were not a Rule 12(b)(6) motion tied to the Amended Complaint. The Court continues to agree with Champion that the pleading fails to allege the necessary elements of a FDCPA claim. Plaintiff's statement that "[s]uch conduct violates the FDCPA and has caused the Plaintiffs damages" is conclusory and fails to provide Champion with notice as to what exact provisions were violated and how they damaged Plaintiff. Plaintiff cannot amend its pleading in briefing. Because Plaintiff has

already been put on notice of this deficiency, the Court finds that dismissal of this claim with prejudice is warranted.

## IV.    CONCLUSION

Having reviewed the relevant pleadings and the remainder of the record, the Court hereby finds and ORDERS:

(1) Wells Fargo's Motion to Dismiss, Dkt. #31, is GRANTED.  All of Plaintiff's claims against Wells Fargo are DISMISSED WITH PREJUDICE.

(2) Defendant Champion's Motion to Dismiss, Dkt. #32, is GRANTED IN PART. All of Plaintiff's claims against Champion are DISMISSED WITH PREJUDICE except the recoupment claim, which is dismissed without prejudice, and the claims brought under Washington State's Consumer Protection Act and Consumer Loan Act, which are not dismissed.

DATED this 9th day of July, 2020.


RICARDO S. MARTINEZ
CHIEF UNITED STATES DISTRICT JUDGE

ORDER RE: MOTIONS TO DISMISS AMENDED COMPLAINT - 16